## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MURPHY MEDICAL ASSOCIATES, LLC,   :
ET. AL.                                                :
                                                          :   No. 3:22-cv-504-VLB
Plaintiffs,                                     :
                                                          :
v.                                                       :   March 6, 2023
                                                          :
CENTENE CORPORATION, ET. AL.,         :
                                                          :
Defendants.                                  :

### RULING ON MOTION TO DISMISS

     This case involves the alleged failure of a health insurance company to reimburse an out-of-network health care provider for COVID-19 testing and related services.  The Plaintiffs are: Murphy Medical Associates, LLC; Diagnostic and Medical Specialists of Greenwich, LLC (collectively with Murphy Medical Associates, LLC, the "Murphy Practice"); and Steven A.R. Murphy, M.D., who claim to have provided COVID-19 testing and health care services throughout southern Connecticut.  The Defendants are: Centene Corporation; New York Quality Healthcare Corporation ("NYQHC"); WellCare Health Insurance of Connecticut, Inc., and;  WellCare of Connecticut (collectively with WellCare Health Insurance of Connecticut, Inc., "WellCare").  The Plaintiffs raise eight causes of action against the Defendants: (1) violation of section 6001 of the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020) (the "FFCRA") and section 3202(a) of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act"); (2) violation of the Affordable Care Act (the "ACA"), 42 U.S.C. § 300gg-19a;

1

(3) violation of section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B); (4) declaratory and injunctive relief under ERISA, 29 U.S.C. § 1132(a)(3); (5) unjust enrichment; (6) breach of contract; (7) violations of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816 ("CUIPA"); and (8) violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-1106b.

The Defendants move to dismiss the First Amended Complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Mot., ECF No. 35; Defs.' Mem., ECF No. 36.)  The Defendants argue that the Plaintiffs cannot meet their burden to establish personal jurisdiction over defendants NYQHC or Centene.  The Defendants also argue that all of the causes of action must be dismissed for failing to state valid claims for relief.  The Plaintiffs oppose the motion to dismiss in its entirety but seek leave to replead in the event the Court grants dismissal.  (Opp., ECF No. 42.)

For the following reasons, the Court GRANTS the motion to dismiss and affords the Plaintiffs 42 days to replead their complaint.

## I.   BACKGROUND

Beginning in early 2020, the world was struck by the COVID-19 pandemic.[1] The then-novel coronavirus struck with vigor, taking the lives of over 1 million

---

[1] *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19*, World Health Organization (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

people in the United States alone.[2]  In the early months of the pandemic, there existed "no known cure, no effective treatment, and no vaccine."  *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (C.J. Roberts concurring) (decided May 29, 2020).   Congress responded to the pandemic by enacting two pieces of legislation.

First, on March 18, 2020, Congress enacted the Families First Coronavirus Response Act (the "FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020).  The FFCRA included several provisions addressing the pandemic, including expanding funding for and access to governmental assistance programs and in some circumstances subsidizing employee paid leave.  Important for this case are the provisions relating to health insurance coverage for COVID-19 testing. Section 6001(a) of the FFCRA generally requires group health plans and health insurance issuers offering group or individual health insurance coverage to provide coverage—without imposing any cost sharing requirements, prior authorizations, or other medical management requirements—for COVID-19 testing and related services.

Second, on March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat 281 (2020).  Section 3201 of the CARES Act amended the types of COVID-19 testing covered by the FFCRA.  Section 3202 generally set the pricing requirements for providers for testing, which is either the negotiated rate with the insurer, or, if

---

[2] *United States COVID-19 Cases, Deaths, and Laboratory Testing*, CDC, available at: https://covid.cdc.gov/covid-data-tracker/#cases_newcaserateper100k (last visited Jan 24, 2023).

there is no negotiated rate, the cash price for such service that is listed by the provider on its website.

In March 2020, the Murphy Practice began providing COVID-19 testing and related services at testing sites throughout southern Connecticut and parts of New York.[3]  (FAC ¶¶ 35–36.)  Between the time they began conducting COVID-19 testing and the time of the First Amended Complaint, the Murphy Practice provided services to over 35,000 patients.  (FAC ¶ 36.)

The Murphy Practice provided COVID-19 testing and related services to members or beneficiaries of Centene's wholly owned subsidiaries, NYQHC and WellCare.  (FAC ¶ 49.)  Centene is a health insurance provider with a principal place of business in Missouri and is the parent company of NYQHC and WellCare. (FAC ¶¶ 14–18.)  NYQHC is incorporated and has its principal place of business is in New York.  (FAC ¶ 16.)  WellCare is incorporated and has its principal place of business in Connecticut.  (FAC ¶¶ 17–18.)

As of the date of the First Amended Complaint, the Murphy Practice billed NYQHC approximately $2,212,761.00 for over 1,800 claims related to COVID-19 testing and related services but has only been reimbursed $147,938.02.  (FAC ¶ 57.)  The Murphy Practice billed WellCare approximately $376,965.00 for over 440 claims related to COVID-19 testing and related services but has only been reimbursed $39,091.79.  (FAC ¶ 59.)  The Murphy Practice claims NYQHC owes them approximately $2,064,822.98 and WellCare owes them approximately

---

[3] The following facts are taken from the Plaintiffs' First Amended Complaint and are accepted as true for the purpose of this decision, but only to the extent that they are not mere conclusory allegations.  *Ashcroft v. Iqbal*,  556 U.S. 662, 678 (2009).

$376,965.  (FAC ¶¶ 58, 60.)  Attached to the First Amended Complaint are two exhibits containing a complete list of the pending coverage claims with NYQHC, (FAC Ex. 1), and WellCare, (FAC Ex. 2).[4]  (FAC ¶¶ 51–52.)

The Defendants have either ignored or failed to engage in a meaningful dialogue regarding payment of the outstanding claims, and, instead, continue to send denials or fractional reimbursement checks to the Murphy Practice.  (FAC ¶ 62.)  The Murphy Practice has attempted to appeal every denied claim and sent the Defendants hundreds of pages of responsive medical laboratory records. (FAC ¶ 63.)   The Defendants have advised the Murphy Practice that they have exhausted their right of appeal on the denied claims.  (FAC ¶ 67.)

The Plaintiffs bring this suit against the Defendants raising eight causes of action all related to the Defendants failure to fully reimburse the Plaintiffs for the COVID-19 testing and related services administered to the Defendants' members and beneficiaries.  The Defendants have filed a motion to dismiss all of the claims.  (Mot. to Dismiss; Defs.' Mem.)  First, the Defendants argue the Plaintiffs cannot meet their burden of establishing personal jurisdiction over NYQHC or Centene, which are both non-Connecticut entities.  (Defs.' Mem. 7–10.)  Second, the Defendants argue the Plaintiffs do not adequately plead the claims raised for several reasons that will be addressed below.  (*Id.* 11–27.)  The Plaintiffs oppose the motion to dismiss.  (Opp.)

---

[4] These exhibits list the initials of the patients, the service date, the claim date, the visit type, the primary payer, the facility providing services, the resource provider, the patient account number, the claim number, the billed charge, payments made, contractual adjustments, write-off adjustments, and the balance on each claim.  (FAC Ex. 1, Ex. 2.)

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(2)

"[I]t is the plaintiff's burden to establish that the court has personal jurisdiction over the defendants."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016).   When a defendant challenges personal jurisdiction by a Rule 12(b)(2) motion, the court is to assume the truth of the plaintiff's factual allegations and determine whether they constitute a *prima facie* showing of jurisdiction.  *See Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).  This *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "In determining whether a plaintiff has met this burden, [the Court] will not draw argumentative inferences in the plaintiff's favor, . . . nor must the Court accept as true a legal conclusion couched as a factual allegation."  *Id.* (internal citations and quotation marks omitted).

### B.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the

6

complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  At the first step, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.*  (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  A court's review of a motion to dismiss under Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

III.   **DISCUSSION**

    A.   <u>Personal Jurisdiction</u>

The Court must first address the Defendants' argument that the Court lacks personal jurisdiction over NYQHC and Centene, which are both foreign corporations incorporated and with a principal place of business outside of Connecticut.  *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question," the Court must first "apply the forum state's long-

arm statute." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015). "If the long-arm statute permits personal jurisdiction," the Court is then to "analyze whether personal jurisdiction comports with due process protections established under the Constitution." *Id.*

>    1.    *Connecticut Long-arm Statute*

The Connecticut corporation specific long-arm statute provides, in relevant part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).

Because the Plaintiffs have the burden of proof to establish whether the Court has personal jurisdiction over NYQHC and Centene, *Waldman*, 835 F.3d at 334, the Court will turn to their pleadings first and will begin the inquiry with the Connecticut long-arm statute.

>    i.    Section 33-929(f)(1): Contract Made or Performed in Connecticut

The Plaintiff first argues it has made a *prima facie* showing of personal jurisdiction under section 33-929(f)(1) of the Connecticut long-arm statute, which subjects a foreign corporation to suit in Connecticut if the action arises "out of any contract made in [Connecticut] or to be performed in [Connecticut]." The Plaintiffs argue that, because they are the third-party beneficiary of contracts

made between NYQHC and Centene and their members, they can meet the requirements under this section of the long-arm statute. This argument fails for the following reasons.

First, though the Murphy Practice claims it is a "third-party beneficiary of each of NYQHC and Centene's members," this terminology is incorrect.  Under Connecticut law, a person has a right of action as a third-party beneficiary when, "the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] . . . . [T]hat intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties . . . ." *Wykeham Rise v. LLC . Federer*, 305 Conn. 448, 474 (2012).  The Plaintiffs have presented no contract from which the Court could determine whether they are third-party beneficiaries.  However, based on the Court's interpretation of the pleadings, it appears the Plaintiffs meant to identify the Murphy Practice as the assignee to the insurance policy contracts between NYQHC and Centene and their members.  *See* (Am. Compl. ¶ 50.)  Assuming this is the Plaintiffs' intended argument, the Plaintiffs have not satisfied the pleading standard to support their allegation that they are an assignee.  Specifically, the Plaintiffs have presented none of the contracts upon which the Court could determine whether there was a valid assignment of benefits.  *See Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) (analyzing the enforceability of an assignment to a healthcare provider under traditional principals of contract interpretation).  Thus, the Plaintiffs' claims of an

9

assignment are conclusory and not afforded weight.  Meaning, the Plaintiffs' argument under a possible 'assignment-of-benefits' theory fails as insufficiently pled.

Second, the Plaintiffs' argument under 33-929(f)(1) does not apply to Centene, who the Plaintiffs do not allege were the insurer, the insured, or the intended beneficiary of any of the healthcare insurance policies at issue in this case.  Rather, the First Amended Complaint only identifies that the Murphy Practice has submitted claims to NYQHC and WellCare.  (FAC ¶¶ 57–60.)  In addition, the only Defendants that the Murphy Practice communicated with relating to these claims are NYQHC and WellCare.  (FAC ¶ 61.)  The allegations suggest that the only insurance contracts implicated in this case are those between NYQHC and WellCare and their respective members, not contracts involving Centene.  Thus, the Plaintiffs have failed to allege facts that would suffice to establish personal jurisdiction over Centene under section 33-929(f)(1) of the Connecticut long-arm statute.

Third, the Plaintiffs provide no legal authority, nor has the Court been capable of finding anything, to support their position that a defendant is subject to the Connecticut long-arm statute under an assignment of benefits theory where the defendant was not party to a contract formed in Connecticut.  The Plaintiff only cites to *Teleco Oil Field Services, Inc. v. Skandia Ins. Co., Ltd.*, 656 F. Supp. 753 (D. Conn. 1987), which does not stand for the proposition advanced by the Plaintiffs and is factually distinguishable.  In *Teleco Oil Field*, the district court stated that "payment of premiums from Connecticut constitutes actual and

substantial performance of the terms of the contract with the [insurers] in this state."  656 F. Supp. at 757.  *Teleco* is factually distinguishable because the insured in *Teleco* was in the state of Connecticut, *id.* at 755, and thus the contract was formed and was to be performed in Connecticut.  Here, the Plaintiffs do not allege that the contracts to which NYQHC was a party made or contemplated performance in Connecticut.  The fact that some services may have been performed in Connecticut does not satisfy section 33-929(f)(1). *See Samelko v. Kingstone Ins. Co.*, 329 Conn. 249, 258 (2018) (concluding "the phrase 'to be performed' as used in § 33–929 (f)(1) refers to the performance that the parties contemplated in the contract, without regard to whether it has actually been performed.").  Nor can the partial payments made by the Defendants, without more, be sufficient to constitute performance of the contract pursuant to section 33-929(f)(1). *Ebm-Papst, Inc. v. AEIOMed, Inc.*, No. 3:08-cv-549(JCH), 2009 WL 291012, at *5 (D. Conn. Feb. 6, 2009).

The Plaintiffs have not established a *prima facie* showing that Centene or NYQHC are parties to or intended third-party beneficiaries of a contract either made or intended to be performed in Connecticut.  Thus, the Court finds the Plaintiffs have not met their burden of showing that section 33-929(f)(1) confers personal jurisdiction over NYQHC and Centene.

ii.    33-929(f)(4): Tortious Conduct in Connecticut

Next, the Plaintiff argues it has made a *prima facie* showing of personal jurisdiction under section 33-929(f)(4), which subjects a foreign corporation to suit in Connecticut if the action arises "out of tortious conduct in this state,

11

whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."   The Plaintiffs argue that the Defendants' alleged failure to reimburse for the services is tortious conduct in Connecticut.  The Plaintiffs again cite to *Teleco* to support their argument that the failure to fully reimburse the billed services constitutes tortious conduct.  Again, *Teleco* is distinguishable because the plaintiff in that case raised tort claims in its complaint and provided specific factual allegations to support the claim.  656 F. Supp. at 758.  Here, the Plaintiffs have not raised a tort claim against the Defendants, let alone have they made a *prima facie* showing that the Defendant committed a tort within the state.  *See Lombard Bros., Inc. v. General Asset Management Co.*, 190 Conn. 245, 258 (1983) (finding a failure to make a *prima facie* showing of tortious conduct is a basis for rejecting application of the tortious conduct provision of the Connecticut long-arm statute).  Rather, any of the Plaintiffs' suggested tort claims would be inappropriate as the basis of this suit is under contract.  *See Sullivan v. Thorndike*, 104 Conn. App. 297, 309 (2007) ("an action in tort is inappropriate where the basis of the suit is a contract, either express or implied.") (citing to *Macomber v. Travelers Property & Casualty Corp.*, 261 Conn. 620, 650 (2002)).  The Plaintiffs merely state that partial payments and denials were paid in Connecticut.  As explained above, making partial payments in Connecticut does not invoke the long-arm statute.  *See Ebm-Papst, Inc.*, 2009 WL 291012, at *5.  Thus, the Court finds the Plaintiffs have not met their burden of showing that section 33-929(f)(4) confers personal jurisdiction over NYQHC and Centene.

The Plaintiffs remaining arguments focus exclusively on personal jurisdiction under the Constitution.  However, as explained above, the Court must first address whether Plaintiff has set forth factual allegations sufficient to constitute a *prima facie* showing that the Connecticut long-arm statute confers personal jurisdiction.  *Eades*, 799 F.3d at 168.   Because the Plaintiff has not met its burden, the Court does not need to address the Constitutional arguments.

Therefore, the Court finds the Plaintiffs have failed to establish a *prima facie* showing that the Court has personal jurisdiction over NYQHC and Centene under the Connecticut long-arm statute.  The claims against NYQHC and Centene are dismissed.[5]

B.   <u>Failure to State a Claim</u>

1.   *FFCRA and CARES Act (Count I)*

Count I of the First Amended Complaint alleges that the Defendants violated section 6001 of the FFCRA and section 3202(a) of the CARES Act.  The Defendants argue that the Plaintiffs' claims under the FFCRA and the CARES Act are not actionable for two reasons.  First, the Defendants argue that the FFCRA and the CARES Act do not provide a private right of action.  Second, the Defendants argue that, even if there was a private right of action under these statutes, the Plaintiffs have not adequately pleaded a violation of the statutes because they do not plead a failure to pay the legitimate cash price as described in the statutes.

---

[5] Dismissal is without prejudice to amending their complaint, as addressed below.

Virtually every district court that addressed whether the FFCRA and CARES Act provides a private right of action in cases such as this—where a health care provider sues an insurer for violating these provisions by failing to pay claims for COVID-19 testing and related services—have all concluded that the Acts do not provide a private right of action.[6]  The parties' briefing focuses heavily on Judge Arterton's decision in *Murphy Medical Associates, LLC v. Cigna Health and Life Insurance Company*, which involved the same plaintiffs as those in this case but different defendants.  2022 WL 743088.  In *Murphy Medical*, Judge Arterton looked at the language of the Acts and the *Cort* factors[7] in determining whether Congress created a private right of action for health care providers under

---

[6] *Murphy Medical Assocs., LLC v. Cigna Health and Life Ins. Co.*, No. 20-cv-1675, 2022 WL 743088, at *2–6 (D. Conn. Mar. 11, 2022); *Horvath v. JP Morgan Chase & Co.*, No.21-cv-1665-BTM, 2022 WL 80474, at *5 (S.D. Cal. Jan 7, 2022); *Saloojas Inc. v. Aetna Health of California, Inc.*, No. 22-cv-1696-JSC, *et al.*, 2022 WL 2267786, at *5 (N.D. Cal. June 23, 2022); *Betancourt v. Total Property Management*, No. 22-cv-33-JTL, 2022 WL 2359286, *3 (E.D. Cal. June 30, 2022); *GS Labs, Inc. v. Medica Ins. Co.*, No. 21-cv-2400-SRN, 2022 WL 4357542, *10 (D. Minn. Sept. 20, 2022); *Saloojas, Inc. v. Blue Shield of California Life and Health Ins. Co.*, No.22-cv-3267-MMC, 2022 WL 4843071, *1 (N.D. Cal. Oct. 3, 2022); *America Video Duplicating, Inc. v. City National Bank*, No. 20-cv-4036-JFW, 2020 WL 6882735, at *4–5 (C.D. Cal. Nov. 20, 2020).  The only case where a district court did find a private right of action, *Diagnostic Affiliates of Northeast Hou, LLC v. United Healthcare Services, Inc.*, No. 21-cv-131, 2022 WL 214101 (S.D. Tex. Jan. 18, 2022), has since been disavowed by the same court that issued the decision. *Diagnostic Affiliates of Northeast Hou, LLC v. Aetna, Inc.*, No. 22-cv-127, 2013 WL 1772197, *9 (S.D. Tex. Feb. 1, 2023) ("This Court thus disavows its decision in *United* insofar as it allowed the FFCRA/CARES Act claim to survive a Rule 12(b)(6) challenge and, joining its sister courts, HOLDS that the FFCRA/CARES Act does not carry with it an implied private cause of action to enforce its terms.").
[7] *Cort v. Ash*, 422 U.S. 66 (1975).

section 6001 of the FFCRA and section 3202 of the CARES Act.  *Id.* at **4–6.  In

*Cort*, the Supreme Court explained:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted, . . . —that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78 (internal citations and quotation marks omitted).  Judge Arterton

concluded that neither section 6001 of the FFCRA nor section 3202 of the CARES

Act contain a private right of action.  *Id.* at *6.  The Court agrees with Judge

Arterton's reasoning.  The Plaintiffs in the case before Judge Arterton, and here,

have failed to identify anything in the text or structure of the Acts that suggest

Congress intended to afford health care providers a privately enforceable

remedy.  *Id.* at *5.

The Plaintiffs' criticism of the conclusion reached by the vast majority of

district courts that have addressed this question focuses on strained in between-

the-lines reading of the Acts.  However, "[i]mplied rights of action are disfavored,

and will not be found in the absence of clear evidence of legislative intent."  *Moya*

*v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020).  The

Plaintiffs have not presented any clear evidence of legislative intent to create a

right of action for these provisions.

The Plaintiffs also argue that Judge Arterton did not have two pieces of evidence that they believe support their argument that the FFCRA and the CARES Act create an implied private right of action.  The evidence are two congressional letters drafted after the enactment of the Acts.  The first letter, signed by five members of Congress, was sent to the Secretaries of the Department of Health and Human Services, Department of Labor, and Department of Treasury on July 7, 2020.  (Pl.'s Ex. B.)  The letter discusses the concerns these members of Congress had about media reports of health insurance companies not covering the costs for COVID-19 testing and related services.  (*Id.*)  Nowhere in this letter does it express any implied intent by Congress to create a private right of action for those providers.  Rather, the letter appears to suggest the contrary is true, because it is directed to the Department heads and "urges [them] to take immediate action."  (*Id. at 1.*)  If these members of Congress believed that health care providers had a private cause of action, there is no reason for them to ask the Department heads to take action to enforce the rights of providers.  The second letter is dated October 23, 2020 from fifty-four members of Congress and sent to the Department of Health and Human Services, again expressing concerns about reports of individual claims for COVID-19 testing being denied. (Pl.'s Ex. C.)  Again, nothing contained in this letter indicates that these members of Congress believed the FFCRA or the CARES Act created a private right of action to health care providers providing COVID-19 testing.

Therefore, the Court concludes that section 6001 of the FCRA and section 3202 of the CARES Act do not create a private right of action.  Accordingly, the Plaintiffs' claim under Count I is dismissed.

### 2.    ACA (Count II)

The Second Count raises a violation of the ACA under section 300gg-19a of Title 42 of the United States Code.  This section, in relevant part, requires health insurance issuers to cover "emergency services" without requiring prior authorization even if the provider is out-of-network.  The Defendants argue that the Plaintiffs' claim under the ACA are not actionable because Congress did not create a private right of action under the provision of the ACA the Plaintiffs claim the Defendants violated.

District courts that have addressed whether this provision of the ACA provides a private right of action have all concluded it does not.  *Gotham City Orthopedics, LLC v. Aetna, Inc.*, No. 20-cv-19634-KM, 2021 WL 9667963, *12 (D.N.J. Sept. 10, 2021); *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2021 WL 3661326, at *8 (D.N.J. Aug. 18, 2021).[8]

The Plaintiffs argue that these decisions are distinguishable because they do not address the intersection between the relevant provisions of the ACA and the testing provisions of the FFCRA and the CARES Act.  The Plaintiffs provide no legal or factual argument as to why this difference justifies rejecting the

---

[8] Only one district court in this circuit has analyzed a claim under this provision of the ACA. *Hartford Healthcare Corp. v. Anthem Health Plans, Inc.*, No. 3:17-cv-1686(JCH), 2017 WL 4955505, at *4 (D. Conn. Nov. 1, 2017).  In that case, the district court "assume[d], without deciding, that the preliminary issues of whether the plaintiffs have a private cause of action and standing to bring the lawsuit are satisfied."  *Id.*  The district court ultimately dismissed the claim.  *Id.* at *9.

conclusions reached by the other courts that have addressed this issue.  The Plaintiffs do not cite to any portion of the statute that would allow the Court to conclude an implicit private right of action was created by Congress.  The Court is constrained from finding an implied private right of action absent clear evidence of Congressional intent.  *See Moya*, 975 F.3d at 128.

Therefore, the Court finds that Count II of the Plaintiff's First Amended Complaint must be dismissed as there is no private right of action under the relevant provision of the ACA.

### 3.    *ERISA (Counts III and IV)*

The Plaintiffs raise two causes of action under ERISA.  The Defendants argue the Plaintiffs' ERISA claims must be dismissed for two reasons.  First, the Defendants argue that, based on evidence they present with their motion to dismiss, NYQHC and WellCare do not in fact provide health plans subject to ERISA, and thus the Plaintiffs' claim fails.  Second, the Defendants argue that, on the face of the First Amended Complaint, the Plaintiffs have failed to set forth factual allegations that the coverage claims at issue arose under a health plan subject to ERISA.

Both of the Defendants' arguments are premised on the same legal principle—that a plaintiff raising an ERISA claim must establish that a defendant's conduct is governed by ERISA.  In the context of this case, it is important to note that not all health insurance plans are governed by ERISA, rather, ERISA only governs "employee benefit plans."  *See* 29 U.S.C § 1003(a); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("The purpose of ERISA is to

provide a uniform regulatory regime over employee benefit plans.").  Thus, the Plaintiffs must plead, and subsequently prove, that the relevant health plans issued by the Defendants are "employee benefit plans."

> ### i.    Facts Raised in Affidavits Attached to the Motion to Dismiss

First, the Defendants argue that NYQHC and WellCare do not provide health plans subject to ERISA, and thus the ERISA claims must be dismissed.  In making this argument, the Defendants rely on affidavits signed by the Senior Director of Sales and Marketing at NYQHC, (Defs.' Ex. 2 ¶ 6) and the President of WellCare, (Defs.' Ex. 3 ¶ 4; Defs.' Ex. 4 ¶ 4), who attest that neither NYQHC nor WellCare provides health plans subject to ERISA.  The Plaintiffs argue the Court cannot consider these affidavits, as they are outside of the four corners of the complaint.

A court's review of a motion to dismiss under Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy*, 482 F.3d at 191. "Where a document is not incorporated by reference, the court may neverless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.*  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.*

In cases raising claims under ERISA, courts have taken into consideration the relevant plan documents that are appended to the defendant's motion to dismiss, finding the plan is an integral part of the complaint that is specifically referenced.  *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 565 (S.D.N.Y. 2011), *on reconsideration,* No. 07 CIV. 10453, 2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011), and *on reconsideration,* No. 07 CIV. 10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011); *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005).  Unlike the cases where the defendant-insurance company affixed the plan to their motion to dismiss, here, the Defendants merely provide affidavits from company executives that claim they do not provide health plans subject to ERISA.  It cannot be said that these affidavits are documents 'integral' to the complaint.  *DiFolco*, 622 F.3d at 111.  Accepting the allegations made by an executive of the Defendants would present a significant risk of unfair adjudication.  The risk to the Plaintiffs, particularly if the statements in the affidavits are false, is significant—namely, the Plaintiffs' claim would be dismissed simply because the Defendants deny an element of the offense.  The prejudice to the Defendants is minimal because the Defendant can present this evidence on summary judgment.  The Defendant could also have tried to procedurally avoided having to raise this evidence on a motion to dismiss had they sought to convert their motion to a motion for summary judgment as permitted under Rule 12(d), which would have allowed the Court to consider the evidence they are presenting.   Thus, the Court finds it cannot rely on the

statements made in the affidavits affixed to the Defendants' motion to dismiss in adjudicating the motion to dismiss.

The Defendant argues that the Court may consider these affidavits because the ERISA claim is subject to dismissal under Rule 12(b)(1)—for lack of subject matter jurisdiction—which allows a court to look outside of the four-corners of the complaint.[9]  The Defendants argument is simple: if the Court finds that the Plaintiffs' have failed to state a federal question claim, like the ERISA claim, the Court will lack subject matter jurisdiction in this action where the Plaintiffs are only asserting subject matter jurisdiction under federal question jurisdiction.  The Court rejects the Defendants' argument because "[t]he question whether a federal statute creates a claim for relief is not jurisdictional."  *Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 365 (1994).  *See also MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *2 (D. Conn. May 7, 2019), *on reconsideration in part,* No. 3:17-CV-01909 (KAD), 2019 WL 3202965 (D. Conn. July 16, 2019) (rejecting the defendant's argument that dismissal of the ERISA claim may be based on Rule 12(b)(1)).

The Defendants proposed approach to considering its evidence on the motion to dismiss under Rule 12(b)(1) is inconsistent with the Federal Rules as detailed below.  If the Court were to grant the Defendants' motion to dismiss the ERISA claims under Rule 12(b)(6), then it is conceivable that the case could be

---

[9] *See Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.").

dismissed for lack of subject matter jurisdiction (governed by Rule 12(b)(1)).  The Defendants' argument suggests that the Court apply the standard for 12(b)(1) motions because of the conceivable consequence of finding the ERISA claims should be dismissed for failure to state a claim.  The Defendants are, in a sense, putting the cart before the horse.  The Defendants cannot circumvent the limitations for a 12(b)(6) motion by simply pointing to the potential consequence (no subject matter jurisdiction) and then applying the standards relevant to the conceivable consequence.  This would in effect allow the Court to always apply the standard for 12(b)(1) motions because any claim that is dismissed could rid the court of subject matter jurisdiction.  Such outcome would be inconsistent with the long-standing distinction between the standards for 12(b)(1) and 12(b)(6) motions.  Thus, the Court will not apply the 12(b)(1) standards for assessing whether the ERISA claims should be dismissed.

Therefore, the Court rejects the Defendants argument that the ERISA claim may be dismissed based on the affidavits affixed to their motion to dismiss.

### ii.    Allegations in the First Amended Complaint

Next, the Defendants argue that the Plaintiffs' claims under ERISA must be dismissed because the Plaintiffs have failed to set forth specific factual allegations that the coverage claims at issue arise under health plans subject to ERISA.  The First Amended Complaint states: "On information and belief, a significant number of claims the Murphy Practice has submitted to Defendants relate to patients enrolled in Defendants' health plans or health plans Defendants' administer subject to ERISA."  (FAC ¶ 96.)  The Plaintiffs argue that this allegation

satisfies their pleading requirements for showing the health plans are subject to ERISA.  The Defendants argue this allegation is conclusory and not sufficient to satisfy the pleading requirements.

"Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions."  5 Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure* § 1224 (4th ed) (explaining, in part, that when an attorney signs a pleading setting forth claims 'on information and belief,' that belief must have been formed after a reasonable inquiry as required under Rule 11).[10]  "[T]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that

---

[10] Rule 11 provides, in relevant part:
> (b) Representations to the Court: By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .
> (c) Sanctions. (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

In other words, if the representations in the First Amended Complaint were not based on the best of the Plaintiffs' counsels' knowledge, information, and belief, formed after a reasonable inquiry, counsel will be found in violation of Rule 11(b) and subject to sanctions under Rule 11(c).

makes the inference of culpability plausible." *Corning Inc. v. Shenzhen Xinhau Photoelectric Tech. Co., Ltd.*, 478 F. Supp. 3d 456, 465 (W.D.N.Y. 2020).

While the Plaintiffs are permitted to make claims "on information and belief," as explained above, the Plaintiffs' allegations use problematic limiting language without any explanation.  Specifically, the Plaintiffs' allegation limits the ERISA liability to "a significant number of claims," (FAC ¶ 96), without putting the Defendants on notice of what claims are and are not violations of ERISA.  In other words, the Plaintiffs' allegation recognizes some, but possibly not all, of the coverage claims at issue are subject to ERISA but provides no information as to which claims are subject to ERISA.  The Plaintiffs are lumping all of the coverage claims together under the ERISA causes of action but provides no factual basis for distinguishing which claims must be dismissed as not subject to ERISA.  *See Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (finding as impermissible the lumping of all defendants under each claim without setting forth a factual basis to distinguish their conduct).  The First Amended Complaint does not fairly put the Defendants on notice of what the ERISA claim is and the grounds upon which it rests.  Thus, the Plaintiffs' First Amended Complaint does not meet the pleading standard for the ERISA claims.

Therefore, the Court finds that the Plaintiffs have failed to establish an entitlement to relief under ERISA, and the ERISA claims are dismissed.  The Court will allow the Plaintiff to replead this claim addressing the defect consistent with this decision.  Should the Plaintiffs replead the ERISA causes of action, the Plaintiffs are required to plead with enough specificity to provide the Defendants

with notice of which of the reimbursement claims are subject to ERISA. If the Plaintiff bases any of its allegations on information and belief, such information and belief must come from a reasonable inquiry by the complaint signatory that complies with Rule 11.

### 4. State Law Claims

Now that the Court has dismissed the federal law claims, the remaining question is whether supplemental jurisdiction should be extended over the Plaintiffs' remaining state law claims.[11]

Pursuant to 28 U.S.C. § 1367, a district court has supplemental jurisdiction over certain state law claims when they are brought in the same case or controversy as one with federal law issues. However, a district court is entitled to decline supplemental jurisdiction when the claim arises from a novel or complex state law issue, the state law claim substantially predominates over claims in which the district court has jurisdiction, when the district court has dismissed all claims within its jurisdiction, or for other compelling reasons. *See* § 1367. It is well-established that supplemental jurisdiction

> is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

---

[11] The Plaintiffs' remaining state law claims are: (1) unjust enrichment, (2) breach of contract, (3) violations of the Connecticut Unfair Insurance Practices Act ("CUIPA"), and (4) violations of the Connecticut Unfair Trade Practices Act ("CUTPA").

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Thus, because supplemental jurisdiction is a doctrine of discretion, courts have ultimate authority in determining when its use is appropriate.

In circumstances where a federal court has dismissed all federal claims in which original jurisdiction existed, the court "must reassess its jurisdiction over the case by considering several factors—judicial economy, convenience, fairness, and comity."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d. Cir. 2004) (citing *Norwalk v. Ironworkers Local Pension 6 Fund*, 81 F.3d 1182, 1191 (2d. Cir. 1996)).  It has been consistently held within the Second Circuit "that 'if [all] federal claims are dismissed *before trial* . . . the state claims should be dismissed as well.'"  *Id.* at 56 (emphasis in original) (citing *Castello v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Here, the Court declines to exercise supplemental jurisdiction because the state law claims arise from novel state law issues.  As the Plaintiffs have identified, the "state law causes of action all arise from the independent legal duty that is the centerpiece of this action: [the] Defendants' duty to obey the FFCRA and CARES Act."  (Opp. 31.)  Neither party presented, nor has the Court been capable of finding, case law within Connecticut addressing whether the Defendants' alleged conduct violates the Connecticut common and statutory law as argued by the Plaintiffs.  It would be contrary to the interests of comity for this Court to try to determine how the highest court of the state of Connecticut will rule on these novel state law issues, particularly where all of the federal question claims have been dismissed.

Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims.  To the extent the Plaintiffs file an amended complaint as discussed below, they may replead the state law claims.

### C. Ability to Amend

The Plaintiffs request leave to file a second amended complaint to cure any pleading deficiencies found by the Court in adjudicating the motion to dismiss. (Opp. 42.)  The Defendants did not object to this request.  "It is the usual practice upon granting a motion to dismiss to allow leave to replead."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 38 (2d Cir. 2018) ("It is inappropriate to deny a plaintiff the opportunity to replead after a defendant's motion to dismiss is granted, simply because the plaintiff decided not to replead before learning whether the court would find the complaint insufficient.").  Therefore, the Court grants the Plaintiffs an opportunity to replead, consistent with the defect of which the Court is authorizing repleading as discussed above, within 42 days of this decision.

## IV.   CONCLUSION

For the above reasons, the Court GRANTS the Defendants' Motion to Dismiss.  The Plaintiffs are afforded 42 days from the date of this decision to replead.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: March 6, 2023